UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SAMUEL P. CHIASSON**                           **CIVIL ACTION**

**VERSUS**                                        **NO. 11-0959**

**HEXION SPECIALTY CHEMICALS, INC. n/k/a**        **SECTION: "G"(3)**
**MOMENTIVE SPECIALTY CHEMICALS, INC. and**
**MOMENTIVE SPECIALTY CHEMICALS, INC.**

## ORDER AND REASONS

Before the Court is Momentive Specialty Chemicals, Inc.'s ("Defendant" or "Momentive") Second Motion for Summary Judgment,[1] wherein Defendant asserts that this Court should grant summary judgment against Plaintiff Samuel P. Chiasson ("Plaintiff") because Defendant is the statutory employer of Plaintiff, such that Plaintiff is prohibited under Louisiana law from suing Defendant in tort and because there is no genuine issue of material fact whether the intentional act exception to workers' compensation tort immunity applies here. Having considered the motion, the opposition, the reply, the record, and the applicable law, for the following reasons, the Court will grant Defendant's Second Motion for Summary Judgment and will dismiss Plaintiff's claims with prejudice.

## I. Background

### A. Factual Background

This personal injury case, brought pursuant to the Court's diversity jurisdiction, involves injury to Plaintiff while he was working at the chemical plant of Defendant, which was formerly

---

[1] Rec. Docs. 58.

known as Hexion Specialty Chemicals, Inc. ("Hexion") and is now known as Momentive.[2]  At the time of the alleged incident, Plaintiff was employed as a welder by Turner Industries Group, LLC ("Turner"), which had entered into a maintenance contract with Momentive.  The language of that contract specifically provided that Momentive was "designated as the statutory employer of [Turner's] direct and statutory employees."[3]

On April 22, 2010 and during the course of his employment, Plaintiff was "assigned to perform regular maintenance work on the Norco C-Unit T-T102 Stripper Bottoms Tank," which involved a "planned tank cleanout."[4]  Specifically, Plaintiff was assigned to cut a door into the side of a chemical storage tank so that the tank could be cleaned.  Plaintiff and a co-worker "were in the process of cutting an opening in the T-T102 Tank when a portion of the metal sheet peeled back at the location, or in the area, where plaintiff's co-worker, who was also a welder, was cutting, and resulted in material from the Tank being released . . . ."[5]  As a result of the release of this material, Plaintiff was swept under a scaffold and buried in the chemical waste product, resulting in injuries.

Plaintiff has alleged that Defendant did not discuss with Plaintiff, nor did Defendant follow, the plan or procedure previously developed and utilized by Defendant for this type of operation.[6]  Specifically, that plan "called for the welders to cut down several inches on the side of the Tank,

---

[2] On October 1, 2010, Hexion changed its name to Momentive.  For clarity, the parties refer to the defendant as "Momentive" rather than "Hexion" throughout their filings, and the Court will do the same.

[3] Agreement for Contract Services, Rec Doc. 28-5 at ¶ 5(f).

[4] *See* Plaintiff's Response to Defendant's Statements of Uncontested Material Facts, Rec. Doc. 61-2 at ¶¶ 5-6 (noting that these facts are uncontested).

[5] *Id.* at ¶ 8 (noting that this fact is uncontested).

[6] Plaintiff further disputes that Turner had in its possession the written procedure that described how the job was to be performed and that the procedure was ever provided to, or reviewed with, the supervisor for the job.  *See id.* at Response to Doc. 58-2, ¶¶ 20-22.

weld a dawg and pin in place, cut down several inches more, weld a dawg and pin in place, and so on, until both welders reached the bottom of the Tank."[7]  It is uncontested that this same task, utilizing this same method, had previously been accomplished without incident or injury seven times since 1990, including one time by Turner employees under the supervision of David Denny, who was also the supervisor at the time of the incident in question here.[8]  During this incident, it is undisputed that the welders began cutting the doorway but did not install the dawgs and pins as they cut down the side of the tank.[9]


## B.  Procedural Background

Plaintiff filed his original complaint in this matter, asserting only a cause of action for negligence, on April 21, 2011,[10] which complaint he then amended the next day to include a jury demand.[11]  Defendant filed its Amended Answer to Plaintiff's First Amended Complaint on June 10, 2011;[12] therein, Defendant pled statutory employer status as an affirmative defense.[13]  The case was initially assigned to Section "N", Judge Kurt D. Engelhardt, but was reassigned to Section "G" of this Court on October 7, 2011.[14]

---

[7] *Id.* at Response to Doc. 58-2, ¶ 14 (noting that this fact is uncontested).

[8] *Id.* at Response to Doc. 58-2, ¶¶ 15-17, 19.

[9] *Id.* at Response to Doc. 58-2, ¶ 24.

[10] Rec. Doc. 1.

[11] Rec. Doc. 3.

[12] Rec. Doc. 10.

[13] *Id.* at ¶ 14.

[14] Rec. Doc. 25.

On December 9, 2011, Defendant filed its First Motion for Summary Judgment,[15] which sought to dismiss Plaintiff's claims on the basis that Louisiana law precludes Plaintiff's negligence claims because the Louisiana Workers' Compensation Act provides that workers' compensation is the exclusive remedy under the statutory employer doctrine unless injury was intentional, which Plaintiff had not alleged.[16]  On March 27, 2012, Plaintiff filed a Motion for Leave to File Second Amended Complaint,[17] which was opposed by Defendant and which was set for submission before Magistrate Judge Daniel E. Knowles, III.  On April 11, 2012, following oral argument, the motion was granted from the bench.[18]  Plaintiff's Second Amended Complaint, which added an intentional tort claim, was filed into the record that same day.[19]  Defendant filed its answer to the Second Amended Complaint on April 19, 2012.[20]

Thereafter, Defendant filed the pending Second Motion for Summary Judgment on April 23, 2012,[21] which motion "urges this Court to grant its motion and dismiss the plaintiff's claims against [Defendant], including specifically plaintiff's newly added claim for intentional tort . . . ."[22]  On

---

[15] Rec. Doc. 28.  The Court notes that, at Plaintiff's request and with Defendant's consent, the Court twice continued the submission date of this motion.  *See* Rec. Docs. 34 and 42.

[16] Rec. Doc. 28-1 at pp. 6-7 (citing La. R.S. § 1061).

[17] Rec. Doc. 43.

[18] Rec. Doc. 54.

[19] Rec. Doc. 55.

[20] Rec. Doc. 56.

[21] Rec. Doc. 58-1 at p. 1.

[22] That motion also noted that Defendant would appeal the Magistrate Judge's ruling allowing Plaintiff to amend his complaint, which Defendant did on April 25, 2012.  *Id.* at p. 3.  On May 24, 2012, this Court denied Defendant's Motion for Appeal/Review of Magistrate Judge Decision and affirmed Magistrate Judge Knowles's ruling granting Plaintiff's Motion for Leave to File Second Amended Complaint.  Rec. Doc. 60.

May 1, 2012, Plaintiff filed his opposition to Defendant's first and second motions,[23] and on May 9, 2012, Defendant filed its reply in further support of its first and second motions.[24]  On August 21, 2012, this Court denied as moot Defendant's First Motion for Summary Judgment,[25] noting, however, that the Court would consider arguments contained within the First Motion for Summary Judgment but not specifically reasserted in the Second Motion for Summary Judgment to the extent that the arguments were incorporated in the Second Motion for Summary Judgment and relevant to its disposition.

## II. Standard on Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[26]  When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[27]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for

---

[23] Rec. Doc. 61.

[24] Rec. Doc. 65.

[25] Rec. Doc. 98.

[26] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[27] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

summary judgment."[28]   If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[29]

As here, if the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden merely by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[30]   At that time, the burden shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[31]   The nonmoving party may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[32]   In doing so, the nonmoving party must produce competent evidence to challenge the motion.[33]   Hearsay evidence and unsworn documents do not constitute competent summary judgment proof.[34]

---

[28] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[29] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[30] *See Celotex*, 477 U.S. at 325.

[31] *See id.* at 324.

[32] *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994).  Although the Court is to consider all evidence in the record in ruling on a motion for summary judgment, the Court is not required to search the record for evidence to support a party's opposition. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.") (citations omitted).

[33] *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992) ("The nonmovant cannot satisfy this burden merely by denying the allegations in the opponent's pleadings but can do so by tendering depositions, affidavits, and other competent evidence to buttress its claim.") (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir.1991), cert. denied, 502 U.S. 1059, 1263 (1992)).

[34] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (citations omitted).

### III.  Parties' Arguments

Here, Defendant asserts that this Court should grant judgment in Defendant's favor and dismiss Plaintiff's tort claims on the basis that, at the time of Plaintiff's accident, Defendant was Plaintiff's statutory employer under Louisiana Revised Statute § 23:1061, such that Defendant is entitled to immunity from suit pursuant to the exclusive remedy provisions of Louisiana Revised Statute § 23:1032.  In support, Defendant alleges that the employment contract provides that Defendant is a statutory employer within the meaning of state law; that the work being performed by Turner, Plaintiff's employer, was integral and essential to Defendant's ability to generate its goods, products, or services; and that the intentional act exception to tort immunity is not applicable here.  Regarding Plaintiff's intentional act claim, Defendant argues that even *if* Plaintiff's allegations were true that Turner was not informed of the proper procedure for cutting into the tank,[35] such actions would "merely amount to negligence."[36]  Additionally, Defendant argues that the history of this task having been performed without injury negates the idea that Defendant knew the accident was substantially certain to occur.[37]  Defendant asserts that it "had no reason to know or believe, or even suspect, that Turner would not follow the established procedure."[38]

In response, Plaintiff contends that he is entitled to pursue his tort remedies under the intentional act exception set forth in Louisiana Revised Statute § 23:1032 because "Momentive

---

[35] Defendant disputes the veracity of this statement, pointing to the deposition testimony of Momentive's maintenance supervisor Jody Ragan, who testified that Turner had previously performed this procedure safely, that Turner had the written procedure in its possession, and that he himself had specifically discussed the procedure with the Turner foreman, David Denny, two days before the incident in question.  Rec. Doc. 58-1 at p. 10.

[36] *Id.*

[37] *Id.* at p. 22 (citing *Batiste v. Bayou Steel Corp.*, 45 So.3d 167 (La. 2010)).

[38] *Id.* at pp. 22-23.

failed to review or communicate the plan to Turner field supervisors prior to commencing the work."[39]  In support, Plaintiff relies on the "Root Cause Analysis," a report prepared following the investigation into the cause of the accident in question.  Plaintiff stresses that the report's conclusion that the plan was not "'reviewed nor communicated to Turner'" prior to the incident was "based upon interviews, and was considered by Hexion (Momentive) to be a '[p]recise, accurate, verifiable, measurable' fact."[40]  Plaintiff argues that this report contradicts testimony that indicated that the plan was communicated to Turner prior to the incident, such that in the light most favorable to Plaintiff, the evidence demonstrates that the plan was not communicated to Turner employees in advance.[41]

According to Plaintiff, "[b]y failing to communicate its established plan, Momentive knew with substantial certainty that the dangerous event that the plan for removing stripper bottom material was designed to prevent, would occur while Chiasson was in the zone of danger."[42]  Plaintiff then cites several cases where, according to Plaintiff, Louisiana courts allowed lawsuits to proceed against statutory employers "in situations where an employer's failure to take action means that the employer essentially ha[d] knowledge that a dangerous situation exist[ed], and yet [did] absolutely nothing to alleviate or guard against the hazards that it pose[d]."[43]  Plaintiff thus concludes that "the courts recognize that the defendant/employer's failure to take action is equivalent to an intentional act, so as to overcome the limitations otherwise provided by the Louisiana workers compensation

---

[39] Rec. Doc. 61 at p. 8 (emphasis omitted) (citing Ex. 1, Root Cause Analysis at p. 13).

[40] *Id.* at pp. 8-9 (citing Ex. 1, Root Cause Analysis at p. 13).

[41] *Id.* at p. 9.

[42] *Id.* at p. 11.

[43] *Id.* at pp. 13-14.

act."[44]

In response, Defendant first argues that Plaintiff has not pointed to competent summary judgment evidence to support his position.[45]  Defendant states that Plaintiff has only offered "an unsigned, unsworn, hearsay document,"[46] namely the Root Cause Analysis that was generated after the accident.  Defendant states that, although it produced the document to Plaintiff, Defendant has not authenticated the document and has not "vouch[ed] for its credibility, truthfulness or accuracy."[47]  Defendant argues that this Court should disregard the report because it is unreliable, unsigned, and unsworn, as well as being inadmissible hearsay.[48]  In fact, according to Defendant, "[t]he only deposition testimony which exists disputes most of the substantive information in this document, including specifically the points made in the document which are relied upon by plaintiff."[49]  Further, Defendant notes that although Plaintiff cites to the sworn testimony of Momentive's maintenance supervisor Jody Ragan, that testimony is inconsistent with the conclusions contained in the report relied upon by Plaintiff.[50]  Additionally, Defendant responds by attaching a sworn affidavit from David Denny, the Turner foreman during the incident at issue, which "makes it clear that, contrary to plaintiff's contentions, Turner had the written procedure for the job prior to commencement of

---

[44] *Id.* at p. 14.

[45] Rec. Doc. 65 at p. 2.

[46] *Id.*

[47] *Id.* at pp. 2-3.

[48] *Id.* at p. 3.

[49] *Id.*

[50] *Id.*

the work in April 2010."[51]   Thus, Defendant argues that the sworn testimony before this Court establishes that the Root Cause Analysis "is not trustworthy or deserving of belief" and must be disregarded by the Court.[52]

Finally, Defendant again contends that even if this Court were to consider the Root Cause Analysis report and even if this report were accurate, Plaintiff's allegations do not demonstrate conduct by Defendant that rises to the level necessary to establish an intentional tort.[53]   Defendant alleges that, under Louisiana law, Plaintiff must show that Defendant took some action, knowing that Plaintiff was substantially certain to be injured as a result; Defendant argues that "merely being passive, or not acting, is not sufficient [to support a claim for intentional tort]."[54]   Distinguishing the cases cited by Plaintiff and citing to several other Louisiana cases, Defendant contends that "while a failure to provide a written procedure, or failure to speak up if there is a duty to do so, may constitute negligence, such conduct is not sufficient to constitute an intentional tort."[55]   Specifically, Defendant correctly notes that the cases cited by Plaintiff for the proposition that inaction can support a claim for intentional tort each involved some affirmative action on the part of the defendant, or else involved prior injuries or "specific indications that an injury was certain to occur."[56]   Defendant then cites to Louisiana appellate cases that have found the substantial certainty requirement not to have been met where there was no evidence of prior injuries and cases that have

---

[51] *Id.* at p. 2.

[52] *Id.* at p. 5.

[53] *Id.*

[54] *Id.* at pp. 6-7.

[55] *Id.* at p. 7.

[56] *Id.* at p. 8.

found that high probability of injury is insufficient to satisfy the substantial certainty requirement.[57]

## IV.  Law and Analysis

Under the Louisiana Workers' Compensation Act (the "Act"), an employer must provide workers' compensation benefits to its injured employees, but in exchange, the employer receives immunity from suits in tort arising from any accidental injuries sustained by an employee.[58]  Thus, the Act provides the exclusive remedy for injury claims unless the injury resulted from an intentional act, or unless otherwise provided by statute.[59]  This obligation and corresponding tort immunity is extended not only to an employee's direct employer but also to any statutory employer pursuant to Louisiana law, which provides that a principal who contracts with another entity to "execute any work, which is a part of his trade, business, or occupation" is entitled to immunity from suit in tort as a statutory employer of the contractor's employees.[60]

A statutory employer relationship arises in either of two situations: (1) "whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer"[61] and (2) when there is a written contract between the principal and the employee's immediate employer

---

[57] *Id.* at p. 10-11 (citations omitted).

[58] La. R.S. § 23:1032(A)(1)(a) ("the rights and remedies herein granted . . . shall be exclusive of all other rights, remedies, and claims for damages . . . .").

[59] La. R.S. § 23:1032(B) ("Nothing in this Chapter shall affect the liability of the employer, . . . to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.").

[60] La. R.S. § 23:1061(A)(1).

[61] La. R.S. § 23:1061(A)(2).

that explicitly recognizes the principal as the employee's statutory employer.[62]  In the situation of

a written contract that purports to recognize the principal as the employee's statutory employer,

"there shall be a rebuttable presumption of a statutory employer relationship between the principal

and the contractor's employees, whether direct or statutory employees."[63]  "This presumption may

be overcome only by showing that the work is not an integral part of or essential to the ability of the

principal to generate the individual principal's goods, products, or services."[64]

In this case, Defendant has presented the Court with the contract agreement entered into

between Momentive and Turner, Plaintiff's employer.  That agreement specifically provides for a

statutory employer relationship:

> With regard to [Turner's] employees performing the Services in Louisiana,
> [Momentive] and [Turner] agree that [Momentive] is designated as the statutory
> employer of [Turner's] direct and statutory employees, pursuant to LA. R.S.
> 23:1061(A)(3); [Momentive] and [Turner] further agree that the Services required of
> [Turner] and its direct and statutory employees pursuant to this Agreement, are an
> integral part of and essential to [Momentive's] ability to generate goods, products and
> services.[65]

Therefore, the presumption that Momentive is, in fact, Plaintiff's statutory employer can only be

overcome if Plaintiff demonstrates that the work performed was not "an integral part of or essential

to the ability of the principal to generate the individual principal's goods, products, or services."[66]

However, not only has Plaintiff failed to provide any such evidence, but further the contract provides

---

[62] La. R.S. § 23:1061(A)(3).

[63] *Id.*

[64] *Id.*

[65] Agreement for Contract Services, Rec Doc. 28-5 at ¶ 5(f).

[66] The burden of rebuttal rests on the plaintiff once the presumption of statutory employer status has arisen. *Everett v. Rubicon, Inc.*, 938 So.2d 1032, 1042 (La. App. 1 Cir. 2006).

that the work was integral and essential, Plaintiff fails to contest the contractual provision, Defendant presents authority that "maintenance services are considered essential to the ability of a facility owner to generate its goods, products or services,"[67] and Plaintiff has specifically stated that he does not contest that "[t]he work being performed by Turner at the time of Plaintiff's accident was regular, routine maintenance work, which is/was essential to the ability of Hexion, now known as Momentive, to conduct its operations at its Norco plant site."[68]  Accordingly, Plaintiff is Defendant's statutory employee and is barred from asserting claims against Defendant in tort unless Plaintiff's claims properly fall into the intentional act exception.

*Intentional Act Exception*

The intentional act exception provides that an employee may sue in tort to recover beyond worker's compensation benefits when the injury is proximately caused by the employer's intentional tortious act.[69]  "The words 'intentional act' mean the same as 'intentional tort' in reference to civil liability."[70]  The exception requires that the person acting and causing injury must either (1) "consciously desire[] the physical result of his act, whatever the likelihood of that result happening from his conduct" or (2) "know[] that the result is substantially certain to follow from his

---

[67] Rec. Doc. 28-1 at p. 8 (citing *Duncan v. Dow Pipeline Co.*, 952 So.2d 884 (La. App. 3 Cir. 2007); *Smith v. Int'l Paper Co.*, No. 06-0395, 2007 WL 1208390 (W.D. La. May 3, 2007); *Armand v. Marathon Oil Corp.*, No. 06-2459, 2007 WL 934452 (E.D. La. Mar. 23, 2007) (Barbier, J.); *Alexander v. Broadmoor, L.L.C.*, No. 04-3326, 2006 WL 1995687 (E.D. La. July 14, 2006) (Lemelle, J.)).

[68] Rec. Doc. 61-2 at ¶ 9.

[69] *Reeves v. Structural Pres. Sys.*, 731 So.2d 208, 210 (La. 1999); La. R.S. § 23:1032(B).

[70] *Bazley v. Tortorich*, 397 So.2d 475, 480 (La. 1981).

13

conduct, whatever his desire may be as to that result."[71]  The focus, therefore, is on the consequences of the act, rather than on the act itself; "only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional."[72]

"[T]he plaintiff's burden for showing the elements of an employer's intentional act within the meaning of the statutory exception is exacting,"[73] and Louisiana courts, as well as federal courts sitting in diversity, have consistently noted that the intentional act exception is to be narrowly interpreted.[74]   In fact, one Louisiana appellate court has stated that "Louisiana courts have distilled four dangerous work place situations that almost universally do not form the basis for an intentional act; to wit: (1) Failure to provide a safe place to work; (2) Poorly designed machinery, failure to follow [Occupational Health and Safety Administration] safety provisions; (3) Failure to provide requested safety equipment; and (4) Failure to correct unsafe working conditions."[75]

"Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls

---

[71] *Id.* at 481; *see also White v. Monsanto Co.*, 585 So.2d 1205, 1208 (La. 1991); *Reeves*, 731 So.2d at 211.

[72] *White*, 585 So.2d at 1208.

[73] *Hodges v. The Mosaic Co.*, No. 05-5201, 2007 WL 2008503, at *4 (E.D. La. July 6, 2007) (Feldman, J.).

[74] *See, e.g., Reeves*, 731 So.2d at 211-12 (citations omitted); *Cole v. State, Dep't of Public Safety & Corrections*, 825 So.2d 1134, 1140-41 (La. 2002); *Snow v. Lenox Int'l*, 662 So.2d 818, 820 (La. App. 2 Cir. 1995); *Rogers v. La. Dept. of Corrections*, 982 So.2d 252, 259 (La. App. 2 Cir. 2008), writ denied, 992 So.2d 931 (La. 2008); *Bridges v. Carl E. Woodward,* Inc., 663 So.2d 458 (La. App. 4 Cir. 1995), writ denied, 666 So.2d 674 (La. 1996); *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320 (5th Cir. 1996); *Dark v. Georgia-Pacific Corp.*, 176 F. App'x 569 (5th Cir. 2006).

[75] *Zimko v. Am. Cyanamid*, 905 So.2d 465, 477 (La. App. 4. Cir. 2005), writ denied, 925 So.2d 538.

short of the kind of actual intention to injure that robs the injury of accidental character."[76]  Mere

knowledge and appreciation of risk, alone, do not constitute intent.[77]

However, even if it appears that a defendant had no intentional desire to hurt the plaintiff,

a plaintiff may still recover under a theory of intentional tort if a substantial certainty existed that the

plaintiff would be harmed by the defendant's actions.  To demonstrate substantial certainty that

injury would follow from an act, a plaintiff must show more than a reasonable probability that injury

will occur; instead, injury must be "inevitable," or "incapable of failing."[78]  Even an employer's

knowledge that a machine is dangerous does not give rise to substantial certainty that injury will

result.[79]  "[B]elieving that someone may, or even probably will, eventually get hurt if the workplace

practices continue does not rise to the level of an intentional act, but instead falls within the range

of negligent acts that are covered by workers' compensation."[80]  Likewise, even knowledge that

similar injuries have occurred in the past does not establish that injury is substantially certain to

occur in the future,[81] and violations of safety standards generally are insufficient to fulfill the

---

[76] *Reeves*, 731 So.2d at 210 (quotation omitted); *see also Micele v. CPC of Louisiana, Inc.*, 709 So.2d 1065 (La. 4 Cir. 1998) (noting that courts in Louisiana "have cautioned that the intentional tort exception should be narrowly construed, holding that mere knowledge and appreciation of a risk does not constitute intent; reckless or wanton conduct, gross negligence, disregard of safety regulations or the failure to use safety equipment by an employer does not constitute intentional wrongdoing") (citations omitted).

[77] *Williams v. Gervais F. Favrot Co.*, 573 So.2d 533 (La. App. 4 Cir. 1991), writ denied, 576 So.2d 49 (La. 1991).

[78] *Marino v. Martin's Oil Country Tubular, Inc.*, 931 So.2d 1089, 1090 (La. 2006) (quotations and citations omitted).

[79] *Id.* (citing *Armstead v. Schwegmann Giant Super Markets, Inc.*, 618 So.2d 1140 (La. App. 4 Cir. 1993), writ denied, 629 So.2d 347 (La. 1993)); *see also Guillory*, 95 F.3d at 1327 ("The substantial certainty test is satisfied when an employer *consciously* subjects an employee to a hazardous or defective work environment where injury to the employee is *nearly inevitable*.").

[80] *Dark*, 176 F. App'x. at 571 (quoting *Reeves*, 731 So.2d at 211-12).

[81] *Snow*, 662 So.2d at 820.

substantial certainty requirement.[82] Further, failure to properly train an employee is not sufficient to maintain an intentional tort claim.[83]  Actions which lead to a "high probability" of injury do not rise to the level of substantial certainty, and even where acts or omissions constitute gross negligence, the substantial certainty exception is not met.[84]

Here, Plaintiff has not alleged, nor is there any evidence to support, that Defendant consciously desired Plaintiff to suffer injuries.  Therefore, Plaintiff's claims against Defendant are only viable if Plaintiff has pointed to evidence that Defendant knew injury was substantially certain to follow from Defendant's conduct, which conduct Plaintiff has alleged to be Defendant's failure to review the tank cleaning procedure with Turner employees.  However, as explained above, this burden is high, and Plaintiff must be able to demonstrate at trial that Defendant knew that injury to Plaintiff was inevitable – not merely probable.  Thus, for Plaintiff's case to survive summary judgment on the basis of Defendant's statutory employer defense, Plaintiff must point to some evidence that demonstrates a material issue of fact as to whether Defendant believed that injury to Plaintiff was "incapable of failing."[85]

First, although knowledge of prior similar injuries does not necessarily establish that Defendant knew that injury was substantially certain to occur,[86] such an allegation might raise a

---

[82] *Reeves*, 731 So.2d at 211.

[83] *See, e.g., Rogers*, 982 So.2d at 258-59; *Armstead*, 618 So.2d at 1143; *Carr v. Spherion*, No. 08-0326, 2009 WL 455408, at *9-10 (W.D. La. Jan. 28, 2009).

[84] *Guillory*, 95 F.3d at 1327-28 (finding that even where some employees and supervisors were aware that several forks had detached from forklifts and some employees knew the subject forklift had fallen off, the evidence established only, at best, negligence).

[85] *See, e.g., Marino*, 931 So.2d at 1090.

[86] *Snow*, 662 So.2d at 820.

material question as to whether injury would be inevitable.  However, here, there is no evidence of prior injuries which might sustain a finding that injury was substantially certain to result.[87]  Plaintiff has specifically stated that he does not contest the fact that no one was previously injured during a planned cleaning of the tank.[88]  Instead, the only disputed facts alleged by Plaintiff are whether the cleaning procedure was provided to Turner in advance and whether Defendant failed to review with Turner employees, prior to the incident, the plans and procedure for the cleaning of the tank.  The parties agree that the proper procedure was not followed and do not contest that the failure to follow the appropriate procedure led to the accident.

First, the Court notes that the primary evidence offered by Plaintiff to demonstrate these alleged triable issues of material fact is the Root Cause Analysis report.  However, Plaintiff fails to note that this very report states that a plan for tank cleaning *was* given to Turner in 2008.[89]  Thus, even if this Court were to accept this report as competent summary judgment evidence[90] for the proposition asserted that "Door plan was not reviewed nor communicated to Turner [field] supervision prior to performing work,"[91] Plaintiff has failed to point to *any* evidence that Turner was

---

[87] Because the Court finds that Plaintiff fails to demonstrate that Defendant knew that injury was substantially certain to result even from Defendant's failure to act, the Court will not address whether omissions, rather than actions, are actionable under Louisiana law.

[88] Rec. Doc. 61-2 at Response to Doc. 58-2, ¶ 19.

[89] *See* Rec. Doc. 61-1 at p. 13 ("Hexion did an engineering analysis and developed plan to cut door sheet in 2008.  This was given to Turner.").

[90] The Court notes that Defendant objects to this Court's consideration of the Root Cause Analysis on the basis that it is hearsay and an unsworn document that is not competent summary judgment proof.  The report, which is unsigned, primarily lists its data sources as interviews with unidentified parties.  However, the Court finds that it need not determine whether the report may properly be considered on a motion for summary judgment because, even assuming that it can be, the evidence is of no consequence here.

[91] *Id.*

not previously in possession of a plan for cleaning the tank – in fact, Plaintiff has cited to a report and to deposition testimony that state just the opposite.  Additionally, Plaintiff has not contested that Turner employees previously utilized the procedure to clean the tank.[92]  Thus, construing the evidence in the light most favorable to Plaintiff, the evidence merely supports the proposition that Turner employees were not properly trained prior to conducting the tank cleanout and does not demonstrate a triable issue of fact as to whether the procedure was previously provided to Turner.

Importantly, as previously stated, courts have specifically found that improper training is insufficient to support an intentional tort claim under Louisiana law.[93]  Thus, although Plaintiff may have presented a triable issue as to whether Turner employees were properly trained regarding the appropriate tank cleaning procedure, this Court finds that such a failure will not support an intentional act exception to statutory employer tort immunity.  Furthermore, this Court finds it appropriate to reiterate that Louisiana courts have consistently stated that the intentional act exception must be narrowly interpreted and that even actions that lead to a high probability of injury do not rise to the level of substantial certainty.  Here, Plaintiff has pointed to no evidence that demonstrates anything more than a mere possibility of injury or, at best, probability of risk, and the mere knowledge of danger or probability of risk is not enough.  Without inevitable injury, the alleged acts and omissions constitute only negligence or gross negligence at best, thus falling outside of the intentional act exception to the statutory employer defense.  Thus, this Court finds that Plaintiff has failed to meet his burden to refute the statutory employer defense because Plaintiff has not

---

[92] *See* Rec. Doc. 65-1 at Response to Doc. 58-2, ¶ 15.

[93] *See, e.g., Rogers*, 982 So.2d at 258-59; *Armstead*, 618 So.2d at 1143; *Carr v. Spherion*, 2009 WL 455408, at *9-10.

demonstrated that a jury could return a verdict in his favor on his intentional tort claim.

### V. Conclusion

For the reasons set forth above, the Court determines that, construing all evidence in the light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Defendant is Plaintiff's statutory employer pursuant to the Louisiana Workers' Compensation Act or as to whether the intentional act exception to workers' compensation tort immunity applies in this case.  As such, the Court finds as a matter of law that Defendant's statutory employer defense succeeds to bar Plaintiff from asserting his claims against Defendant in tort.  Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Second Motion for Summary Judgment[94] is **GRANTED** and that Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this 26th day of August, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[94] Rec. Doc. 58.